UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-427-KSF

ROXANNE UMPHENOUR, *et. al.*                                                              PLAINTIFF

v.                                  **OPINION AND ORDER**

LYNN JANE MATHIAS, *et. al*.                                             DEFENDANTS

\* \* \* \* \* \* \*

This matter is before the court on two motions to disqualify counsel: (1) the motion of the plaintiffs to disqualify the members of Stites & Harbison, PLLC ("Stites") from representation of the defendants; and (2) the motion of the defendants to disqualify Terri Stallard and the remaining members of McBrayer, McGinnis, Leslie & Kirkland, PLLC ("MMLK") from representation of the plaintiffs. These motions have been fully briefed and are now ripe for review. The court, having reviewed the record and being otherwise sufficiently advised, will DENY both motions.

I.     **FACTUAL BACKGROUND**

This matter is a dispute related to a family trust which was established by James V. Martin. Plaintiffs, Roxanne Umphenour, Norman W. Umphenour and ANZAC, LLC, filed this action stating claims against the defendants, Lynn Jane Mathias, John Robert Mathias, individually, and John Robert Mathias in his capacity as trustee of the Joseph V. Martin Irrevocable Trust dated May 17, 1985, for waste, unjust enrichment and breach of contract.

1

Mr. Martin created the James V. Martin Irrevocable Trust on May 17, 1985 (the "Trust") one day prior to his marriage to Lillian G. Martin. The principal asset of the Trust is/was Highcroft Farm, approximately 120 acres located in Fayette County, Kentucky. The Trust was established to provide for Mr. Martin's needs during his lifetime. John R. Mathias, a defendant, was named as co-trustee of the Trust along with Mr. Martin. The trust instrument provides that "after the death of Mr. Martin, the trust shall terminate and the corpus and any undistributed income shall be distributed to the children of [Mr. Martin]," Lynn Jane Mathias, Roxanne Umphenour (then Roxanne Martin), and John Grover Martin (collectively, the "Beneficiaries"). (Trust Agreement attached as Exhibit A to Defendants' Motion to Disqualify).

Mr. Martin died in 1997. Subsequent to his death, the Trust was the subject of litigation filed by Lillian Martin. Lillian Martin claimed that the Trust was a fraud on her dower rights and attempted to acquire one-half of the interest in Highcroft Farm ("Dower Litigation"). Katherine Coleman and Gina McCann of the law firm of Sturgill, Turner, Barker & Moloney, PLLC originally represented the Beneficiaries and the Trust. In October 1998, Joel Turner and Andrew Horne of the law firm of Brown, Todd & Heyburn (which is now known as Frost Brown Todd ("FBT")) were substituted as counsel for the Beneficiaries and the Trust. The Dower Litigation concluded by order of the Kentucky Supreme Court entered in 2003. The Dower Litigation was funded, in part, by a note in the amount of $65,000 issued by Mr. Mathias, Ms. Mathias and the Trust to ANZAC, LLC.

Although Terri Stallard was an attorney at Brown, Todd & Heyburn during the pendency of the Dower Litigation, there is no evidence in the record that Ms. Stallard worked on the Dower Litigation matter. There is evidence, however, that Ms. Stallard performed work related to the probate of Mr. Martin's estate after the completion of the Dower Litigation. Stallard wrote a letter

to Mr. James Roscoe at Bank One dated November 4, 2003, regarding the "Martin Trust Agreement." (Letter from Terri Stallard attached as Exhibit C to Defendants' Motion to Disqualify). Barton T. Rogers, an attorney at FBT, wrote a letter to Roxanne Martin dated March 20, 2003, wherein Mr. Rogers stated that he "appeared on your and your siblings' behalf . . . " in connection with the probate of Mr. Martin's will. The letter goes on to state that upon receipt of additional information, "Terri or I will be in contact with you." (Letter from Barton T. Rogers attached as Exhibit D to Defendants' Motion to Disqualify). No engagement letter has been presented with regard to the prior legal work performed by attorneys at FBT.

In 1993, prior to Mr. Martin's death, Steve Ruschell, an attorney at Stites, advised Mr. Mathias regarding the duties of a fiduciary. (Letter from Steve Ruschell to John Mathias attached as Exhibit B to Plaintiffs' Motion to Disqualify). In relation to the legal advice regarding the duties of a fiduciary, Mr. Ruschell held a meeting at Stites' office on July 23, 1993, which the Beneficiaries attended. Ms. Umphenour recorded the meeting because her attorney, Jonathan Buckley, was unable to attend. (Notes from July 23, 1993, meeting attached as Exhibit A to Defendants' Response to Plaintiffs' Motion to Disqualify). Ms. Umphenour states that she "spoke with Mr. Ruschell, and relied upon his advice, in regard to general matters pertaining to the Trust, and specifically to matters pertaining to the fiduciary duties of both Co-Trustees (my father and John Mathias)," and that she "offered [her] information and relied on Mr. Ruschell's opinions based on [her] understanding that [they] had an attorney-client relationship." (Affidavit of Roxanne Umphenour attached as Exhibit A to Plaintiffs' Motion to Disqualify). The bills for this advice were paid by Mr. Mathias. No engagement letter has been presented with regard to this legal work.

Ms. Stallard is now associated with the law firm of MMLK. She originally entered an appearance in this matter but subsequently withdrew. Ms. Stallard has been copied on correspondence regarding the current litigation. Mr. Ruschell is still associated with the Stites law firm. He has not entered an appearance in this matter but was the recipient of letters attached as Exhibits to the instant motions.

**II.    LEGAL STANDARD**

As this court has noted in its prior opinions, motions to disqualify are governed by two sources of authority - local rules and federal common law. *See Republic Services, Inc. v. Liberty Mutual Insurance Co.*, 2006 WL 3004014 at *4 (E.D. Ky. Oct. 20, 2006) (unpublished). Thus, the attorneys of record in this action are subject to the Kentucky Rules of Professional Conduct and the judicial decisions interpreting those rules. A district court has inherent authority to disqualify an attorney as a sanction for professional unethical conduct. *See Cavender v. U.S. Xpress Enters., Inc.*, 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002). A district court does not, however, possess "unfettered discretion to disqualify counsel." *Kitchen v. Aristech Chemical*, 769 F. Supp. 254, 258 (S.D. Ohio 1991). "[D]isqualification is a drastic measure which courts should be hesitant to impose except when absolutely necessary. Disqualification separates a party from the counsel of his choice with immediate and measurable effect. *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001) (cited by *Hall v. MLS National Medical Evaluations*, 2008 WL 533542 (E.D. Ky. Feb. 27, 2008) (unpublished)). When confronted with a motion to disqualify, courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of its choice. *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F. 2d 222, 224 (6th Cir. 1988). Resolving these competing interests requires the court to balance the interest of the public

4

in the proper safeguarding of the judicial process together with the interests of each party to the litigation. *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F. 2d 704, 715 (6th Cir. 1982).

Rule 1.9 and Rule 1.10 of the Kentucky Rules of Professional Conduct set forth in Kentucky Supreme Court Rule 3.130 guide this court's review of the conduct challenged by both the plaintiffs' motion to disqualify the defendants' counsel based on a prior attorney-client relationship between plaintiffs and Mr. Ruschell and the defendants' motion to disqualify the plaintiffs' counsel based on a prior attorney-client relationship between defendants and Ms. Stallard.

Rule 1.9 entitled **"Conflict of Interest: former client**," provides as follows:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation;

(b) Represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly associated had previously represented a client

>  (1) whose interests are materially adverse to that person; and

>  (2) about whom the lawyer had acquired information protected by Rule 1.6 and 1.9(c) that is material to the matter; unless the former client consents after consultation.

(c) A lawyer who has formerly represented a client in a matter of whose present or former firm has formerly represented a client in a matter shall not thereafter:

>  (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known; or

>  (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

SCR 3.130(1.9).

Rule 1.10, entitled "**Imputed disqualification: general rule,**" governs disqualifications which may be imputed to an entire firm. This rule provides:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.
>
> (b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
>
>> (1) The matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
>>
>> (2) Any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.
>
> (c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.
>
> (d) A firm is not disqualified from representation of a client if the only basis for disqualification is representation of a former client by a lawyer presently associated with the firm, sufficient to cause that lawyer to be disqualified pursuant to Rule 1.9 and:
>> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no specific part of the fee therefrom; and
>>
>> (2) written notice is given to the former client.

SCR 3.130 (1.10).

In cases on disqualification based on former clients, the Sixth Circuit, following circuits nationwide, uses a three part test developed in *Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). The *Dana Corp.* test analyzes: (1) whether a past attorney/client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) whether the subject matter of those relationships is substantially related; and

(3) whether the attorney acquired confidential information from the party seeking disqualification. *Id.* at 889. The party moving for disqualification bears the initial burden of persuasion and proof on its motion. *Bartech Indus., Inc. v. Int'l Baking Co. Inc.*, 910 F. Supp. 388, 392 (E.D. Tenn. 1996). A decision to disqualify counsel must be based on a factual inquiry conducted in a manner which will afford appellate review. *General Mill Supply Co.*, 697 F. 2d at 710.

Rule 3.7 of the Kentucky Rules of Professional Conduct guides the court on the issue of whether Terri Stallard must be disqualified based on the argument that she may be a witness in the pending action. Rule 3.7 entitled "**Lawyer as Witness**" states as follows:

(a) A lawyer shall not act as an advocate at trial in which the lawyer is likely to be a necessary witness except where:

(1) The testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case; or

(3) Disqualification of the lawyer would work a substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or 1.9.

SCR 3.130(3.7). "[A] major source of prejudice is the likelihood that the jury will confuse the attorney as a witness with the attorney as an advocate," *id.* cmt. 2, and "[i]t may not be clear to a jury whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 559-60 (Ky. 2001). Therefore, "a balancing is required between the interests of the client and those of the opposing party." SCR 2.130(3.7), cmt. 4. When a court balances these interests, however, "disqualification of an attorney sought to be called as a witness for the opposing party is subject to a more stringent standard because 'a litigant may call his

7

or her opponent's attorney as a trial tactic, seeking to disqualify the attorney from the case,'" *Zurich*, 52 S.W.3d at 559 (quoting *Warrilow v. Norrell*, 791 S.W.2d 515 (Tex. App. 1989).

**III.    ANALYSIS**

    **A.    Plaintiffs' Motion to Disqualify Stites & Harbison, PLLC**

The plaintiffs argue that Stites must be disqualified from representing the defendants because Mr. Ruschell had a prior attorney-client relationship with Roxanne Umphenour. Since plaintiffs have not proven that the elements of the *Dana Corp.* test have been satisfied, the motion to disqualify defendants' counsel is denied.

First, the plaintiffs have not established that an attorney-client relationship ever existed between Stites (whether through Mr. Ruschell or other attorneys) and Ms. Umphenour. While there is no litmus test to determine whether an attorney-client relationship existed, courts consistently look for evidence such as written agreements between the parties regarding representation and who was responsible for paying the bill for the legal services. *See Health Maintenance Organization Association of Kentucky, Inc. v. Nichols*, 964 F. Supp. 230, 234 (E.D. Ky. 1997). Here, there was not written understanding of engagement between Ms. Umphenour and Stites and Ms. Umphenour did not pay the bill for the legal services provided by Mr. Ruschell. The only evidence of an attorney-client relationship between Ms. Umphenour and Mr. Ruschell is Ms. Umphenour's affidavit stating that she believed such a relationship existed. While a client's belief is an important consideration, such belief must be reasonable. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F. 2d 1224, 1230 (6th Cir. 1989) (observing that courts generally base their conclusions on whether a contract of representation has been executed or whether the alleged client is reasonably justified in believing that the attorney represents him). The court does not find that

Ms. Umphenour's belief that such a relationship existed to be reasonable because no objective evidence supports such a belief.

Second, assuming an attorney-client relationship existed between Mr. Ruschell and Ms. Umphenour, the subject matter of Mr. Ruschell's prior representation in question is not substantially related to the subject matter of this matter. The prior representation was with regard to Mr. Mathias's fiduciary responsibility while Mr. Martin was living and acting as a co-trustee. Here, the litigation focuses on Mr. Mathias's actions since the death of Mr. Martin while he is the sole trustee.

Third, there is no evidence that Mr. Ruschell acquired confidential information that would assist with this matter. While Ms. Umphenour states that she provided confidential information to Mr. Ruschell, there is no evidence in the record of what that information might have been. Further, the information was provided in the presence of the defendants during an adversarial meeting.

Even if there were a prior attorney-client relationship that would lead to disqualification of Mr. Ruschell, there is insufficient evidence to show that such disqualification should be imputed to the law firm of Stites pursuant to Rule 1.10. It appears from the record that the prior legal services were performed exclusively by Mr. Ruschell and other than a letter with Mr. Ruschell's name, plaintiffs present no evidence that Mr. Ruschell is working on this matter as he has not entered an appearance. As long as Mr. Ruschell were screened from participation pursuant to Rule 1.10, Stites need not be disqualified from representing the defendants in this case.

**B. Defendants' Motion to Disqualify McBrayer, McGinnis, Leslie & Kirkland, PLLC**

The defendants argue that the plaintiffs' counsel, attorneys with MMLK, should be disqualified because of Terri Stallard's prior representation of the defendants while she was an

attorney at FBT. Since the plaintiffs fail to establish that the elements of the *Dana Corp.* test have been met, the motion is denied.

The court finds that the defendants have established the first element of the *Data Corp.* test because the defendants had a prior attorney-client relationship with attorneys at the law firm of FBT, including Ms. Stallard. The second element of the *Data Corp.* test, however, has not been established. While an attorney-client relationship existed between defendants and Ms. Stallard, the subject matter of the prior representation was not substantially related to the subject matter of this representation. If Ms. Stallard had been involved as an attorney in the Dower Litigation, the argument that the subject matter is substantially related would be stronger. Ms. Stallard, however, was not part of the Dower Litigation. Her specific prior representation was limited to probate of Mr. Martin's estate which is not substantially related to the claims in this case. The defendants argue that the plaintiffs' claims in this matter simply must be "substantially related" to the prior litigation because the plaintiffs seek reimbursement for legal bills paid by plaintiffs on behalf of the Trust. Ms. Stallard's prior representation related to probate of Mr. Martin's estate is quite different from the current issue of whether a contract existed between the Trust and the plaintiffs for reimbursement of legal bills. Further, the plaintiffs state that they do not seek reimbursement for legal bills related to the probate of the estate but rather related to the Dower Litigation which all parties agree that Ms. Stallard was not involved.

The defendants have also failed to fulfill the third element of the *Data Corp.* test. There is no evidence of confidential information that might have been acquired during the prior representation that would be relevant to the current litigation. Since the subject matter of the prior representation and the current litigation are not substantially related and there is no confidential

information that Ms. Stallard acquired as a result of her prior representation of the defendants that is relevant to this case, the motion to disqualify is denied. Further, even if Ms. Stallard were disqualified under Rule 1.9, there is nothing in the record to establish that her disqualification should be imputed to MMLK pursuant to Rule 1.10. As long as Ms. Stallard were screened from participation pursuant to Rule 1.10, MMLK need not be disqualified from representing the defendants in this case

Similarly, the defendants have failed to demonstrate any basis to disqualify MMLK as a result of their claim that Ms. Stallard is a potential witness in this matter. Rule 3.7 provides that, with specific exceptions, "a lawyer shall not act as an advocate at trial in which the lawyer is *likely* to be a *necessary* witness." SCR 3.130(3.7) (emphasis added).[1] In footnotes to their motion, the defendants argue that Ms. Stallard is a potential witness about past billing records and about whether the Trust owns the property and, as a result, MMLK must be disqualified. This court disagrees. First, Ms. Stallard is not "necessary" as a witness about the billing records because another attorney or the billing coordinator with FBT can testify regarding those records if any such testimony is needed. Second, Ms. Stallard is not a "necessary" witness about whether the trust is an owner of the property because that determination is for the court to make and her opinion is not relevant. Moreover, the defendants have failed to show that Ms. Stallard is "likely" to be a witness. The defendants merely state that she "may" be a witness. For the court to sever the attorney-client

---

[1] Rule 1.10 does not expressly require that a law firm be disqualified when an attorney in that firm is disqualified pursuant to Rule 3.7, comment 5 to Rule 3.7 provides "If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, Rule 1.10 disqualifies the firm also." Here, there is no conflict under Rule 1.9 so disqualification of Ms. Stallard would not be on this basis. Thus, even if Ms. Stallard were disqualified because she is a witness, MMLK would not necessarily be disqualified.

relationship based on what *might* occur in the course of litigation is too severe a sanction. Thus, the court will deny the motion to disqualify plaintiffs' counsel pursuant to Rule 3.7.

**III.   CONCLUSION**

Accordingly, **IT IS ORDERED** that the plaintiffs' motion to disqualify defendants' counsel [DE #14] is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion to disqualify plaintiffs' counsel [DE # 17] is **DENIED**.

**IT IS FURTHER ORDERED** that the Order for Meeting and Report, which was held in abeyance pending the court's order on the motions to disqualify, is reinstated [DE # 7]. The parties shall have 30 days from entry of this order to conduct the meeting as required by Rule 26(f) to discuss the nature and basis of their claims and defenses and the possibilities of a prompt settlement or resolution of the case and to develop a proposed discovery plan pursuant to the original Order for Meeting and Report. No later than 10 days from the date of the meeting the parties shall file a written joint report of the meeting with the court.

This the 16th day of July, 2008.



Signed By:
*Karl S. Forester*  KSF
**United States Senior Judge**